**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

**KERRY ORGERON**                                                      **CIVIL ACTION**

**versus**                                                             **NO. 06-1451**

**BURL CAIN, WARDEN**                                                  **SECTION: "I" (3)**

**REPORT AND RECOMMENDATION**

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2).[1] Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination. According to Section 2254(e)(2), the district court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. § 2254(e)(2)(B)).

Petitioner, Kerry Orgeron, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana. On June 26, 1996, he was convicted of three counts of purse snatching in violation of La.Rev.Stat.Ann. § 14:65.1.[2] On July 17, 1996, he was sentenced on each count to a term of twenty years imprisonment. It was ordered that his sentences run consecutively and that he be given credit for time served.[3] On November 18, 1996, he was found to be a fourth offender and he was resentenced as such to a term of life imprisonment, without benefit of probation, parole, or suspension of sentence, with credit for time served.[4] On December 9, 1996, the trial court noted that it had erred in failing to vacate petitioner's prior sentence before resentencing him as a habitual offender. The court then corrected that error, vacated the prior sentence, and again resentenced petitioner to a term of life imprisonment, without benefit of probation, parole, or suspension of sentence, with credit for time served.[5] On August 29, 1997, petitioner filed a written

---

[2] State Rec., Vol. III of VI, transcript of June 26, 1996, p. 87; State Rec., Vol. I of VI, minute entry dated June 26, 1996; State Rec., Vol. I of VI, jury verdict form.

[3] State Rec., Vol. III of VI, transcript of July 17, 1996; State Rec., Vol. I of VI, minute entry dated July 17, 1996.

[4] State Rec., Vol. III of VI, transcript of November 18, 1996; State Rec., Vol. I of VI, Judgment and Reasons dated November 18, 1996; State Rec., Vol. I of VI, minute entry dated November 18, 1996.

[5] State Rec., Vol. III of VI, transcript of December 9, 1996; State Rec., Vol. I of VI, minute entry December 9, 1996.

motion for appeal.[6] On March 11, 1998, the Louisiana Fifth Circuit dismissed that appeal as untimely.[7]

On April 8, 1998, and on or about September 21, 1998, petitioner filed with the state district court applications for post-conviction relief.[8] He was subsequently granted an out-of-time appeal, and, on April 27, 1999, the Louisiana Fifth Circuit Court of Appeal affirmed his convictions. However, the intermediate appellate court noted that it could not determine on which of the three counts the enhanced sentence had been imposed. Therefore, the enhanced sentence was vacated and the matter was remanded for resentencing.[9] On September 10, 1999, the trial court resentenced petitioner with respect to his conviction on count two of the bill of information to a term of life imprisonment, without benefit of probation, parole, or suspension of sentence.[10] Petitioner, through counsel, filed a timely motion for appeal;[11] however, for reasons not apparent from the state court record, the state court failed to act on that motion. Nevertheless, in response to a post-conviction application petitioner filed on January 24, 2002,[12] the state district court granted him an appeal on

---

[6] State Rec., Vol. I of VI.

[7] State v. Orgeron, 708 So.2d 1242 (La. App. 5th Cir. 1998) (No. 97-KA-1054); State Rec., Vol. I of VI.

[8] State Rec., Vol. I of VI.

[9] State v. Orgeron, No. 98-KA-1016 (La. App. 5th Cir. Apr. 27, 1999) (unpublished); State Rec., Vol. I of VI.

[10] State Rec., Vol. V of VI, transcript of September 10, 1999.

[11] State Rec., Vol. I of VI.

[12] State Rec., Vol. I of VI.

March 1, 2002.[13] On July 30, 2002, the Louisiana Fifth Circuit Court of Appeal affirmed petitioner's enhanced sentence.[14] He then filed with the Louisiana Supreme Court an application for a writ of certiorari and/or review which was denied on September 5, 2003.[15]

On July 19, 2004, petitioner filed with the state district court another application for post-conviction relief.[16] That application was denied on July 22, 2004.[17]

On September 3, 2004, petitioner filed with the state district court yet another application for post-conviction relief.[18] That application was denied on September 29, 2004.[19] He next filed with the Louisiana Fifth Circuit Court of Appeal an application for a supervisory writ which was denied on November 29, 2004,[20] as well as an application for rehearing which was likewise denied on December 15, 2004.[21] On or after January 14, 2005, he then filed with the

---

[13] State Rec., Vol. I of VI, Order dated March 1, 2002.

[14] State v. Orgeron, No. 02-KA-276 (La. App. 5th Cir. July 30, 2002) (unpublished); State Rec., Vol. I of VI.

[15] State v. Orgeron, 852 So.2d 1021 (La. 2003) (No. 2002-KO-2754); State Rec., Vol. I of VI.

[16] State Rec., Vol. I of VI.

[17] State Rec., Vol. I of VI, Order dated July 22, 2004.

[18] State Rec., Vol. II of VI.

[19] State Rec., Vol. II of VI, Order dated September 29, 2004.

[20] Orgeron v. State, No. 04-KH-1368 (La. App. 5th Cir. Nov. 29, 2004) (unpublished); State Rec., Vol. II of VI.

[21] Orgeron v. State, No. 04-KH-1422 (La. App. 5th Cir. Dec. 15, 2004) (unpublished); State Rec., Vol. II of VI.

Louisiana Supreme Court an application for a writ of certiorari[22] which was denied on January 9, 2006.[23]

On January 30, 2006, petitioner filed the instant federal application for *habeas corpus* relief. In support of his application, petitioner claims:

1. Prosecutorial misconduct;

2. Ineffective assistance of counsel;

3. Cumulative errors;

4. Insufficient evidence;

5. The trial court erred in determining that petitioner was a fourth offender; and

6. Excessive sentence.[24]

The state argues that petitioner's federal application is untimely.[25] For the following reasons, this Court agrees.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") generally requires that a petitioner bring his Section 2254 claims within one (1) year of the date on which his

---

[22] State Rec., Vol. VI of VI.

[23] State *ex rel.* Orgeron v. State, 918 So.2d 1031 (La. 2006) (No. 2005-0KH-0506); State Rec., Vol. II of VI.

[24] Rec. Docs. 1, 5, and 6.

[25] Rec. Doc. 7.

conviction or sentence becomes "final." Under the AEDPA, a judgment is considered "final" upon the expiration of time for seeking direct review. 28 U.S.C. § 2244(d)(1)(A).[26]

The state argues that, pursuant to Salinas v. Dretke, 354 F.3d 425 (5th Cir. 2004), the AEDPA's statute of limitations in the instant case commenced upon the expiration of petitioner's time for filing a timely notice of appeal after he was resentenced on December 9, 1996, despite the fact that he was subsequently granted an out-of-time appeal. While the state may be correct, the state's position is not unassailable for the following reasons.

In Salinas, the United States Fifth Circuit Court of Appeals was confronted with the issue of how the grant of an application to file an out-of-time petition for discretionary review ("PDR") under Texas law affected the running of the AEDPA's statute of limitations. In that case, the federal district court had held that the petitioner's one-year period for seeking federal *habeas corpus* review expired on March 31, 2002, and, therefore, his federal application was untimely when filed on April 28, 2002. However, on October 30, 2002, the Texas Court of Criminal Appeals granted petitioner's application to file an out-of-time PDR. At that point, *for state law purposes,* petitioner's conviction was again on direct review until the state court rejected the PDR on January 22, 2003. The United States Fifth Circuit Court of Appeals noted:

> When the Court of Criminal Appeals grants the right to file an "out-of-time" PDR, it restores the petitioner to the position he was in when he first possessed the right to petition for discretionary review. A defendant who still has the right to file a PDR is considered to be in the midst of the direct review process.

---

[26] Although § 2244(d)(1) has alternative provisions providing for other events which can trigger the commencement of the statute of limitations, the alternative provisions are not applicable in the instant case.

- 6 -

Salinas, 354 F.3d at 429 (citation and footnote omitted).  The Fifth Circuit continued:

> On this basis, Salinas urges that the statute of limitations could not have lapsed in April 2002, because the prescription period should have begun only on the conclusion of direct review, *see* 28 U.S.C. § 2244(d)(1)(A), and direct review once again was pending when the [federal] district court dismissed his petition [on November 18, 2002].  Thus, Salinas argues, his conviction was "de-finalized," and the statute of limitations – though legitimately initiated in August 2000 – should be deemed to have begun again with the rejection of the PDR in January 2003.
>
> We disagree.  On its face, AEDPA provides for only a linear limitations period, one that starts and ends on specific dates, with only the possibility that tolling will expand the period in between.  See § 2244(d)(1), (2).  *So long as the petitioner is being held pursuant to the same state court judgment, nothing in AEDPA allows for a properly initiated limitations period to be terminated altogether by collateral state court action.*  Rather, the statutory framework only provides for the tolling of limitations during the pendency of state collateral review.  See § 2244(d)(2).
>
> Thus, the issue is not whether the Court of Criminal Appeals' action revitalized Salinas's limitations period, but rather whether the existence of that potential relief prevents the limitations period from starting to run after that level of appeal has been denied.  That is to say, we need to determine whether, in Texas, the mechanism by which Salinas obtained the right to file an "out-of-time" PDR is part of the direct or collateral review process.  If that relief comes as a result of direct review, there would be no basis for limitations even to begin running until the Court of Criminal Appeals finalized the judgment by declining to grant relief on that level of appeal.  If, on the other hand, an "out-of-time" PDR is awarded only as a result of the collateral review process, limitations is tolled merely while the petitioner seeks to obtain that relief.
>
> After reviewing the relevant state law, we conclude that the Court of Criminal Appeals is authorized to grant this form of relief only through state habeas proceedings.  As a result, when a petitioner convicted in the Texas system acquires the right to file an "out-of-time" PDR, the relief tolls AEDPA's statute of limitations until the date on which the Court of Criminal Appeals declines to grant further relief, but it does not require a federal court to restart the running of AEDPA's limitations period altogether.

Salinas, 354 F.3d at 429-30 (footnotes omitted) (emphasis added).

This Court agrees with the state's contention that Salinas is normally applicable when an out-of-time appeal has been granted under Louisiana law. In Louisiana, an out-of-time appeal can be secured *only* in post-conviction proceedings. State v. Counterman, 475 So.2d 336 (La. 1985). Therefore, despite the fact that the grant of the out-of-time appeal again restores a prisoner to the midst of the direct review process for state law purposes, Salinas dictates that the AEDPA's statute of limitations, having already been properly initiated, generally cannot be "restarted" by the filing of the post-conviction application, the grant of the out-of-time appeal, and the subsequent proceedings. Soileau v. Cain, No. Civ. A. 05-656, 2005 WL 1629945, at * 4-6 (W.D. La. July 7, 2005) (Hill, M.J.) (adopted on Aug. 9, 2005, by Doherty, J.); see also McGee v. Cain, 104 Fed. App'x 989, 992 (5th Cir. 2004), cert. denied, 543 U.S. 1162 (2005).

However, the potential problem with the state's position is Salinas' caveat that the AEDPA's clock is not restarted "[s]o long as the petitioner is being held pursuant to the same state court judgment ...." Salinas, 354 F.3d at 429-30. Arguably, that caveat is critical here.

After petitioner was granted his first out-of-time appeal, the Louisiana Fifth Circuit Court of Appeal vacated the enhanced sentence imposed on December 9, 1996. Therefore, he is not currently being held pursuant to *that* judgment. Rather, he is being held pursuant to the *judgment of September 10, 1999*, which resentenced him on his conviction on count two of the bill of information to a term of life imprisonment, without benefit of probation, parole, or suspension of sentence. Therefore, out of an abundance of caution, and because petitioner's federal application

is untimely regardless, this Court declines to find petitioner's federal application untimely based on Salinas.

Rather, this Court will assume for the purposes of this decision that the statute of limitations commenced ninety (90) days after the Louisiana Supreme Court's judgment of September 5, 2003, when petitioner's period expired for seeking a writ of certiorari from the United States Supreme Court.[27]  See Roberts v. Cockrell, 319 F.3d 690, 694 (5th Cir. 2003); Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999); Chester v. Cain, Civ. Action No. 01-1958, 2001 WL 1231660, at *3-4 (E.D. La. Oct. 15, 2001); see also U.S. Sup. Ct. R. 13(1).  Accordingly, this Court finds that petitioner's period for seeking federal *habeas corpus* relief commenced on December 4, 2003, and expired one year later, unless that deadline was extended through tolling.

The Court first looks to statutory tolling.  The AEDPA provides that the statute of limitations is tolled for the period of time during which a properly filed application for state post-conviction relief or other collateral review attacking a conviction or sentence is pending in state court.  28 U.S.C. § 2244(d)(2).

---

[27] The Court notes that petitioner's third direct appeal also arguably raises a Salinas issue.  As previously noted, the trial court inexplicably failed to act on petitioner's timely written motion for appeal.  State Rec., Vol. I of VI.  However, over two years later, the court subsequently granted petitioner an appeal in response to a post-conviction application he filed.  However, neither the district court nor the appellate court expressly referred to that appeal as an "out-of-time appeal."  In light of that fact, as well as the facts that a notice of appeal *was* timely filed and that petitioner's federal application is untimely regardless, this Court pretermits a determination of whether the appeal should be considered an "out of time appeal" and whether Salinas is in fact implicated.  Rather, the Court, for the purposes of this decision, will simply treat the third appeal as a normal direct appeal.

Two hundred twenty-seven (227) days of the statute of limitations elapsed before the period was tolled by petitioner's state post-conviction filing on July 19, 2004. Although that application was denied on July 22, 2004, tolling continued until August 23, 2004, when petitioner's period expired for filing an appellate court writ application. See Melancon v. Kaylo, 259 F.3d 401, 404-06 (5th Cir. 2001); Louisiana Uniform Rules of the Courts of Appeal Rule 4-3.[28]

An additional ten (10) days of the limitations period then elapsed before petitioner again tolled the period by filing the post-conviction application on September 3, 2004. That period of tolling continued until December 29, 2004, when petitioner's period expired for filing a Louisiana Supreme Court writ application, i.e. thirty days after the Louisiana Fifth Circuit Court of Appeal's judgment of November 29, 2004. Melancon, 259 F.3d at 404-06; Louisiana Supreme Court Rule X, § 5(a). For the following reasons, this Court finds that petitioner was entitled to no further statutory tolling after December 29, 2004.

Although petitioner later filed with the Louisiana Fifth Circuit Court of Appeal an application for rehearing, no such application is allowed when the intermediate appellate court has merely denied a writ application. State v. Crandell, 924 So.2d 122, 124 (La. 2006). Because petitioner's filing was not allowed by state law, it was not "properly filed" so as to warrant statutory tolling under 28 U.S.C. § 2244(d)(2). Gaudet v. Cain, No. 01-30460, 2002 WL 243278, at *1 & n.5 (5th Cir. Jan. 18, 2002); see also Douglas v. Horn, 359 F.3d 257, 262 (3rd Cir. 2004); Brown v.

---

[28] Because the thirtieth day of the period fell on a Saturday, the period was extended to the following Monday, August 23, 2004. See La.C.Cr.P. art. 13; La.Rev.Stat.Ann. § 1:55.

Shannon, 322 F.3d 768, 775 n.5 (3rd Cir. 2003); Adeline v. Stinson, 206 F.3d 249, 252-53 (2nd Cir. 2000); Evans v. Senkowski, 228 F.Supp.2d 254, 263 (E.D.N.Y. 2002).[29]

Also, the Court notes that petitioner subsequently filed with the Louisiana Supreme Court an application for a writ of certiorari[30] on or after January 14, 2005.[31] Because that application was not filed within thirty days of the November 29 judgment, it was untimely. Crandell, 924 So.2d at 124-25. A petitioner receives no tolling credit for an untimely filing. Williams v. Cain, 217 F.3d 303 (5th Cir. 1999); see also Pace v. DiGuglielmo, 544 U.S. 408, 417 (2005).

Because two hundred thirty-seven (237) days of his one-year period had already elapsed as of December 29, 2004, petitioner had only one hundred twenty-eight (128) days remaining in which to file his federal application. Therefore, his federal application had to be filed by May 6, 2005, in the absence of further tolling.

Because petitioner filed no other state applications after December 29, 2004, he is not entitled to further statutory tolling. Further, although the United States Fifth Circuit Court of Appeals has held that the AEDPA's statute of limitations can be equitably tolled, this Court knows

---

[29] In its denial, the Louisiana Fifth Circuit Court of Appeal specifically cited Rule 2-18.7 of the Uniform Rules of the Louisiana Courts of Appeal. Orgeron v. State, No. 04-KH-1422 (La. App. 5th Cir. Dec. 15, 2004) (unpublished): State Rec., Vol. II of VI. Rule 2-18.7 specifies the types of cases in which applications for rehearing are considered, and a case in which the court has merely denied a writ application is not among them. Accordingly, by citing that rule, the court was clearly indicating that petitioner's application was improper.

[30] State Rec., Vol. VI of VI.

[31] Petitioner himself dated that application January 14, 2005. Therefore, even if petitioner is given the benefit of the state "mailbox rule," the application cannot be considered "filed" prior to that date.

of no reason that would support equitable tolling of the statute of limitations in the instant case. Equitable tolling is warranted only in rare and exceptional circumstances.  See Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998).  It "applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights."  Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir. 1999) (internal quotes and citations omitted).  Petitioner has not demonstrated the presence of such circumstances in this case.

For the foregoing reasons, petitioner's federal application for *habeas corpus* relief had to be filed on or before May 6, 2005, in order to be timely.  Petitioner's federal application was not filed until January 30, 2006,[32] and it is therefore untimely.

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the federal petition for *habeas corpus* relief filed by Kerry Orgeron be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from

---

[32] Petitioner signed his federal *habeas corpus* application on January 30, 2006.  Rec. Doc. 1. That date represents the earliest date that petitioner could have presented his application to prison officials for mailing and, therefore, the earliest date that this Court could deem his *habeas* petition to have been filed for statute of limitations purposes.  Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003).

a failure to object.  Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

      New Orleans, Louisiana, this eighth day of September, 2006.

*/s/ Daniel E. Knowles, III*

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**